## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                    Cr. No. 05-0148 JCH

BRIAN NEIL GRACE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Suppress and Brief in Support of Same, filed February 18, 2005, **[Doc. No. 16]**.  On May 5, 2005, the Court held an evidentiary hearing on the motion, at which Defendant was present.  Defendant was represented by Leon Schydlower, Esq., and the United States was represented by Assistant United States Attorney Richard Watts.  After considering the evidence presented at the hearing, in Defendant's Evidentiary Supplement to the Motion to Suppress, filed May 19, 2005, **[Doc. No. 29]**, and in the Government's Exhibits, filed June 2, 2005, **[Doc. No. 30]**, along with the arguments of counsel and written briefs, the Court concludes that the motion should be DENIED.

## FINDINGS OF FACT

Based upon the testimony presented at the hearing, in Defendant's Evidentiary Supplement to the Motion to Suppress, and the Government's Exhibits, the Court makes the following findings of fact.

Investigator Lindell Wright has worked for the Dona Ana County Sheriff's Department,

1

in Las Cruces, New Mexico, for nine and one-half years, during which time he has been a community police officer, deputy, and investigator.  *See* May 5, 2005 Transcript ("Tr.") at 7.

On October 6, 2004, Investigator Wright had just finished eating lunch at home when he entered his unmarked police vehicle, a 2002 Chevrolet Impala, and heard Sergeant Joe Renault broadcasting part of a "be on the lookout" (BOLO) notice over the police radio.  Investigator Wright notified dispatch by radio that he was back in service, and then telephoned Sergeant Renault in order to obtain the complete BOLO notice.  According to Investigator Wright, Sergeant Renault informed him that the BOLO notice was issued for a white, elderly man with a ball cap in a silver RAV4 who had just robbed a bank in Las Cruces.  *See id.* at 7-8, 30.  The Court finds Investigator Wright's testimony with respect to the contents of the BOLO notice to be credible.

Deputy Daniel Ramondo of the Dona Ana County Sheriff's Office testified that the BOLO notice was issued for an older male bank robbery suspect with "salt and pepper" hair possibly wearing a ball cap and driving a smaller, silver SUV.  *See id.* at 32.  Deputy Ramondo could not recollect precisely what the BOLO notice said with respect to the type of SUV, but believed it could have identified the vehicle as "possibly" an Isuzu or Honda.  *See id.* at 33, 41-42.  Because Deputy Ramondo admits to being unable to recollect precisely the contents of the BOLO notice, the Court finds Deputy Ramondo's testimony with respect to the notice to be less credible than Investigator Wright's testimony.

Investigator Wright testified that Sergeant Renault also informed him that the time lapse between the robbery and Investigator Wright's initial telephone call was approximately five minutes.  Investigator Wright also indicated, however, that he had no reason to disagree with an

2

FBI's agent's affidavit stating that the time lapse was fifteen minutes.  *See id.* at 25-26.  Deputy Ramondo testified that the time lapse was approximately ten to twenty minutes between the BOLO notice and Investigator Wright's call over the radio for assistance, which occurred shortly after Investigator Wright's initial telephone call with Sergeant Renault, but also stated that he was not "100 percent" sure.  *See id.* at 33, 42.  Ray Lopez, an investigator employed by defense counsel, testified that it takes approximately ten minutes to drive from the bank that had been robbed to the place where Defendant was apprehended.  *See id.* at 45.  Deputy Ramondo testified that the bank is approximately five to six miles from the location where Defendant was apprehended.  *See id.* at 35.  After weighing the credibility of each of these witnesses, the Court finds that the time lapse between the robbery and Investigator Wright's detention of Defendant to be no greater than ten to fifteen minutes.  The Court finds Investigator Wright's testimony credible, however, and therefore believes that Sergeant Renault informed Investigator Wright that the time lapse between the robbery and Investigator Wright's initial telephone call was approximately five minutes.

Las Cruces is not a city with a large geographical scope, and at the time the BOLO notice was issued, all law enforcement officers were on notice of the robbery and the description of the suspect.  *See id.* at 11-12.

After Investigator Wright ended his conversation with Sergeant Renault, he proceeded south on Roadrunner Parkway.  Soon thereafter, about one-fourth of a mile from Investigator Wright's residence, Investigator Wright noticed a silver RAV4 heading in the opposite direction. Investigator Wright turned his unit around, telephoned Sergeant Renault a second time, informed Sergeant Renault that he was pulling up behind a silver RAV4, and asked Sergeant Renault if law

enforcement had information about the suspect's license plate.  Investigator Wright then opined

that his question was "stupid," because "anybody robbing a bank wouldn't have a license plate."

Tr. at 8, 17.  As Investigator Wright pulled up behind the silver RAV4, he noticed that the

vehicle did not have a license plate and informed Sergeant Renault of that fact.[1]  *See id.*

Investigator Wright also noticed that a white male, possibly elderly, wearing a white baseball cap

was driving the vehicle.  *See id.* at 10-11.

The driver of the silver RAV4 turned west, off of Roadrunner Parkway.  At this point,

Investigator Wright called central dispatch over his radio to give them his location and request

assistance from a marked law enforcement unit.  *See id.* at 8, 20.  The driver of the RAV4 turned

again so that his vehicle was heading west on another street, then turned the RAV4 around so

that it was facing east, and then slowed the vehicle down to a stop.  The driver of the RAV4 had

his window down.  After the RAV4 came to a stop, Investigator Wright slowed his vehicle down

to a stop, in the westbound lane, and turned his vehicle to approximately a 30 degree angle in the

westbound lane.  Once stopped, the front of Investigator Wright's vehicle was approximately ten

feet from the front of the RAV4.  Investigator Wright's vehicle was not blocking the path of the

RAV4, and the driver of the RAV4 could have proceeded in his vehicle past Investigator

Wright's vehicle.  *See id.* at 8-9, 27, 28, 40.  Investigator Wright testified that the driver of the

RAV4 was free to leave and was not detained.  *See id.* at 23.  Investigator Wright also testified

that "anybody with common sense would know [his vehicle] was a police car or at least some

---

[1] Defendant does not dispute that his license plate was not properly displayed at the back
of his vehicle.  Defendant, however, presented photographic evidence indicating that a New
Mexico license plate permit was located on the vehicle's front dashboard and visible through the
front windshield.  *See* Def's Evidentiary Supplement to Mot. to Suppress, exhs.

form of enforcement car." *Id.* at 30-31.

Investigator Wright, who was in his assigned, plain clothes uniform, which, on that day consisted of slacks, a dress shirt, and a badge in plain view affixed to his belt, exited his vehicle and asked the driver of the RAV4 to place his hands on the steering wheel. Investigator Wright walked to the driver's window, informed the driver that he was with the Sheriff's Office, and explained that the driver's vehicle matched the description of a vehicle involved in a bank robbery. *See id.* at 8-9, 14. The driver then said, "I did it." *Id.* at 9. At this time, Investigator Wright drew his weapon and asked the driver to exit his vehicle. The driver informed Investigator Wright that the money was on the seat and that the gun was underneath the passenger seat. *See id.*

Investigator Wright escorted the driver to the front of Investigator Wright's vehicle, where he placed him on his knees with his hands interlocked on top of his head. Investigator Wright did not have handcuffs accessible, so Investigator Wright instructed the suspect to remain as positioned until backup arrived. Las Cruces Police Department and Federal Bureau of Investigation units arrived at the scene soon thereafter.

Defendant is a white male, in his mid-fifties to sixties, with "salt and pepper" hair that is darker on top, and whiter on the bottom. *See id.* at 38. If Defendant were wearing a baseball cap, Deputy Ramondo testified that Defendant's hair would look white. *See id.* at 43.

**DISCUSSION**

The propriety of a traffic stop is governed by the general principles of *Terry v. Ohio*, 392 U.S. 1 (1968) and *United States v. Sokolow*, 490 U.S. 1 (1989).[2]  Under these cases, "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30).  This determination is an objective one.  The Court must ask, "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  *Terry*, 392 U.S. at 21-22.

Here, the stop was based not upon Investigator Wright's personal knowledge that criminal activity "may be afoot," but rather on the basis of a BOLO notice issued by another law enforcement officer.  The Supreme Court has held, that, "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information."  *United States v. Hensley*, 469 U.S. 221, 232 (1985) (citations and internal citations omitted).  "It is the objective reading of the flyer or bulletin that determines whether police officers can defensibly act in reliance upon it."  *Id.* at 232-33.  "Assuming the

---

[2] At the hearing on the motion to suppress, Investigator Wright testified that he did not stop or detain Defendant, and that Defendant voluntarily came to a stop and allowed himself to be questioned by Investigator Wright.  If Defendant were not stopped or detained, he could not sustain his Fourth Amendment claim.  The Court need not determine whether Defendant in fact was detained for purposes of the Fourth Amendment, because the Court holds that even if he were detained, the detention did not violate the Fourth Amendment.

police make a *Terry* stop in objective reliance on a flyer or bulletin, . . . the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop, . . . and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." *Id.* at 233.

Defendant argues that Investigator Wright did not have reasonable, articulable suspicion to stop him because the stop was based "only on the make of the car (Toyota RAV4) and the race of the Defendant (white male)." Def's Reply to Suppression Resp., p. 3. Defendant maintains that without a "'reasonable, particular suspicion that the person has been, is, or is about to be engaged in criminal activity,'" the investigative detention was unlawful. *See* Mot. to Suppress and Br. in Supp. of Same, p. 2 (quoting *United States v. Recalde*, 761 F.2d 1448, 1454 (10th Cir. 1985)). Defendant does not appear to be challenging the issuance of the flyer, *i.e.*, that it was not issued on the basis of articulable facts supporting a reasonable suspicion, but rather Investigator Wright's reliance upon only three aspects of the flyer, *i.e.*, the make of the car and the race and sex of the suspect.

Investigator Wright based his stop of Defendant upon more factors than Defendant's race and sex, and the make and model of the car. Specifically, Investigator Wright also based his stop upon Defendant's age and the fact that Defendant was wearing a ball cap. *See* Tr. at 10-11. Moreover, Investigator Wright was told by Sergeant Renault that approximately five minutes had elapsed between the time of the robbery and Investigator Wright's initial telephone call to Sergeant Renault, and in fact, the time lapse between the robbery and the apprehension of Defendant was no more than ten to fifteen minutes. In addition, Investigator Wright took note of the fact that Defendant's vehicle was missing a license plate at the rear of his vehicle. Although

7

Investigator Wright did not initiate a traffic stop because of the missing license plate, the fact of the missing license plate would have aroused the suspicion of a reasonable officer in Investigator Wright's position. *Cf. Terry*, 392 U.S. at 21-22 (inquiry whether a stop is reasonable is an objection one). Because Investigator Wright took note of all of these factors, Investigator Wright's objective interpretation of the BOLO notice was reasonable. Investigator Wright's stop of Defendant also was not significantly more intrusive than would have been permitted the issuing officer of the BOLO notice.

Under *Terry*, Investigator Wright's stop of Defendant must have been based upon reasonable, articulable suspicion. This Court concludes that a reasonable officer in Investigator Wright's position would have had a reasonable, articulable suspicion that criminal activity was afoot, based upon the make and model of Defendant's car, the race, sex, and age of Defendant, the fact that Defendant was wearing a ball cap, the fact that the vehicle being driven by Defendant did not have a license plate at the rear of the vehicle, and the fact that the sighting occurred relatively close in time to the robbery.

Defendant's argument to the contrary is unpersuasive. In his Reply to the Government's Suppression Response, Defendant argues that *United States v. Jones*, 998 F.2d 883 (10th Cir. 1993), is analogous, and that under *Jones*, the Court should grant his Motion to Suppress. *See* Reply to Govt's Suppression Resp., pp. 2-3. In *Jones*, police received a report that two African-American men had pounded hard on the door of an apartment, that one of the men was holding a gun, that both of the men were wearing a lot of jewelry and that one of the men was wearing a purple sweater, and that the men had left driving a black Mercedes. *See* 998 F.2d at 884. Police issued a radio report, and shortly thereafter a patrol officer spotted a black Mercedes, being

driven by an African-American man, with another African-American man in the back seat, and a woman and six- or seven-year-old child in the front seat, proceeding south in an area that was a mile and one-half west of, and approximately five minutes driving time from, the site of the disturbance. *See id.* Other than the radio report, nothing about the appearance or operation of the vehicle aroused the officer's suspicions or contributed to the justification for the stop. *See id.* Although the men did not turn out to be the suspects, the detaining officer happened to observe a clear plastic bag protruding from beneath the center arm rest of the car. *See id.* Upon closer inspection, the officer discovered that the bag contained crack cocaine. *See id.* Prior to trial, the defendants moved to suppress the evidence, and the district court denied the motion. *See id.* On appeal, the Tenth Circuit reversed. *See id.*

According to the Tenth Circuit, the police officer who stopped the car "did so on very meager evidence." *See id.* The officer knew only that two black men had left a disturbance five minutes earlier in a black Mercedes. *See id.* at 884-85. The officer could not see the clothing that the occupants of the vehicle were wearing, and the officer was not told any additional distinguishing features of the car. *See id.* at 885. Because of the layout of the streets in that part of Albuquerque, the officer had no idea in what direction the men were traveling. *See id.* In addition, there were many aspects of the vehicle that suggested it was not the car for which police were looking. *See id.* For example, "[T]he car . . . intercepted (a) contained a six- or seven-year-old girl, (b) was not traveling from the direction of the disturbance, (c) was on a street that . . . could only be reached from the disturbance by a circuitous route, and (d) promptly parked in front of a grocery store." *Id.* The Tenth Circuit held that the color and manufacturer of the car and the race of the occupants of the car was insufficient evidence to give rise to a reasonable

suspicion that the car was the vehicle that fled the disturbance.  *See id.* at 885.

Based upon this holding, Defendant argues that the Court should grant his suppression motion because the stop here, as in *Jones*, was based solely upon Defendant's race and the make and model of his car.  *See* Reply to Govt's Suppression Resp., p. 3.  *Jones*, however, is not controlling, because, as the Court already has explained, the stop here was based upon more than Defendant's race and the make and model of his car.  Specifically, Investigator Wright also took note of the age of Defendant and the fact that Defendant was wearing a ball cap.  In addition, Investigator Wright noticed that the vehicle being driven by Defendant did not have a license plate properly displayed at the rear of the vehicle.  Moreover, Las Cruces, New Mexico is much smaller in terms of population and geographic scope than Albuquerque, New Mexico.  *Jones* also is distinguishable because the propriety of the search in *Jones* was further tainted by the fact that police were acting upon an uncorroborated tip from an informant with whom they had no experience, and the vehicle seized was far from the site of the disturbance, carried a six- or seven-year-old child, and had just parked at a grocery store--evidence tending to negate any inference that the driver and his companions had been engaged in criminal activity.  *See id.* at 886.  Here, the record does not contain any such negating evidence.

Defendant has not demonstrated that Investigator Wright's detention exceeded the bounds of the Fourth Amendment.  Accordingly, Defendant's Motion to Suppress and Brief in Support of Same is denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant's Motion to Suppress and Brief in

Support of Same **[Doc. No. 16]** is DENIED.


UNITED STATES DISTRICT JUDGE